UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CAROL LOESCH, | Case No. 12-14797 |
| Plaintiff, | Arthur J. Tarnow |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS (Dkt. 8)**

**I.    PROCEDURAL HISTORY**

   A.    <u>Proceedings in this Court</u>

   On October 29, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J. Tarnow referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim. (Dkt. 2). This matter is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction. (Dkt. 8). Plaintiff filed a response on March 20, 2013. (Dkt. 12). Pursuant to an order of the court, defendant filed a reply brief on June 27, 2013. (Dkt. 14, 15).

B. <u>Administrative Proceedings</u>

Plaintiff first filed an application for disability insurance benefits on June 5, 2008, and was only insured for disability insurance benefits through December 31, 1999. (Dkt. 8-1, Ex. 2). Plaintiff's application was denied initially on June 26, 2008, and on reconsideration on August 28, 2008. *Id*. Plaintiff filed a written request for a hearing on September 30, 2008. (Dkt. 8-1, Exs. 1 and 2).

On February 22, 2011, an administrative law judge dismissed plaintiff's request for a hearing on the basis of *res judicata* because the record showed that plaintiff previously filed an application for disability insurance benefits that was denied in a determination dated March 9, 2007. (Dkt. 8-1, Exs. 2 and 3). She noted that the March 2007 determination became administratively final because plaintiff did not request review within the stated time period. (Dkt. 8-1, Ex. 2). The ALJ stated that the prior decision adjudicated the time period before the termination of plaintiff's insured status on December 31, 1999. *Id*. The ALJ also found that plaintiff did not lack the capacity to understand the appeal process in 2007. *Id*. The ALJ also observed that none of the criteria for reopening existed. *Id*. Accordingly, the ALJ dismissed the request for a hearing. *Id*. The Appeals Council denied review on August 29, 2012. (Dkt. 8-1, Ex. 5).

## II. PARTIES' ARGUMENTS

### A. The Commissioner's Motion to Dismiss

The Commissioner points out that it is well-established that a federal court has no jurisdiction to review a decision by the Commissioner to dismiss on the basis of *res judicata* absent a colorable constitutional challenge. *See Harper v. Sec'y of Health & Human Servs.*, 978 F.2d 260, 265 (6th Cir. 1992) (per curiam); *Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289, 292 (6th Cir. 1989) ("The courts have consistently upheld the imposition of the doctrine of administrative *res judicata* in social security cases except under circumstances that implicate a colorable constitutional issue."); *Parker v. Califano*, 644 F.2d 1199, 1201 (6th Cir. 1981) ("[A]bsent a colorable constitutional claim, federal courts are without jurisdiction to review the Secretary's denial of benefits on the basis of res judicata."). The Commissioner contends that the ALJ's dismissal on the basis of *res judicata* was proper under the regulations. 20 C.F.R. § 404.905 states that an "initial determination is binding unless [the claimant requests] a reconsideration within the stated time period, or we revise the initial determination." The Commissioner contends that because plaintiff never requested reconsideration, the March 2007 denial became final. That denial covered plaintiff's allegations of disability through her date last insured in December 1999. (Dkt. 8, Ex. 3). To qualify for disability insurance benefits, plaintiff must show that she was disabled

no later than December 31, 1999. 42 U.S.C. § 416(i); 20 C.F.R. §§ 404.131(a), 404.320(b)(2); *Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988). Because the time period prior to that date had already been adjudicated, the Commissioner maintains that the ALJ was authorized to dismiss the complaint on the basis of res judicata. 20 C.F.R. § 404.957(c)(1) (authorizing dismissal where "[t]he doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action"); *see also Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 687 (6th Cir. 1992). Thus, the Commissioner maintains that the Court has no jurisdiction over plaintiff's claim.

  B. <u>Plaintiff's Response</u>

  Plaintiff agrees that a federal court has no jurisdiction to review a decision by the Commissioner on the basis of *res judicata* absent a colorable constitutional challenge. Therefore, plaintiff alleges a violation of procedural due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Section 205(b) of the Social Security Act, 42 U.S.C. § 405(b), and the constitutional right of due process require not only that a claimant be given reasonable notice, but also an opportunity to be heard before her disability benefits are denied. In this case, according to plaintiff, there exists a substantial question

regarding whether she was given this fundamental opportunity.

Plaintiff also contends that, although the ALJ's dismissal on the basis of administrative *res judicata* was done in accordance with 20 C.F.R. § 404.95, the dismissal may still be reconsidered because equitable tolling is appropriate. "The doctrine of equitable tolling allows federal court to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004). Specifically, equitable tolling is available when the petitioner can demonstrate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

In this case, plaintiff contends that she has pursued her rights diligently in light of the extraordinary circumstances standing in her way (i.e., her mental illnesses). Plaintiff argues that her medical records provide that she suffers from a litany of mental illnesses, including bipolar affective disorder, anxiety, major depression, borderline personality disorder, and poor impulse control. (Dkt. 12-5, 12-6, 12-7). During the time frame defendant says that plaintiff failed to diligently pursue her rights, plaintiff points out that she was doing other things like attempting suicide (Dkt. 12-5), threatening suicide (Dkt. 12-8), telling a police officer she wanted to kill herself during a traffic stop (Dkt. 12-5), presenting in

emergency rooms with "suicidal ideation" (Dkt. 12-9), and threatening to harm her son if she did not get help for her mood swings and headaches. (Dkt. 12-10). Plaintiff points out that she has tallied at least 20 psychiatric admissions. (Dkt. 12-5). Plaintiff maintains that her illnesses not only robbed her of the will to comply with the deadline at issue, it prevented her from comprehending the impact of failing to meet the deadline on her future because she "saw no future." (Dkt. 12-9).

In light of the aforementioned mental health issues, plaintiff asserts that she has been pursuing her rights with due diligence and dealing with the extraordinary circumstances of her illnesses that prevented her from doing so with more timeliness and with a comprehension of the consequences to her future. Moreover, her illnesses prevented her from having the opportunity to be heard as contemplated in § 205(b) of the Social Security Act, 42 U.S.C. § 405(b). Accordingly, plaintiff contends that equitable tolling of plaintiff's deadline for obtaining a reconsideration of her benefits is appropriate, and that a failure to equitably toll this deadline would constitute a violation of due process because she did not have a sufficient opportunity to be heard due to her illnesses.

C. The Commissioner's Reply

The Commissioner steadfastly maintains that because the defendant's order of dismissal is not subject to judicial review, this matter should be dismissed

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. In the order of dismissal, the ALJ considered whether to reopen the March 2007 administrative determination, thus potentially allowing plaintiff to show that she was continuously disabled as of December 1999, but the ALJ declined to do so. *See* 20 C.F.R. §§ 404.987-404.989. According to the Commissioner, plaintiff has not argued that the ALJ's decision not to reopen was erroneous, nor does the additional evidence submitted by plaintiff show that the decision not to reopen was erroneous. Moreover, an administrative decision not to reopen a prior determination is not subject to judicial review absent a constitutional claim. *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977) (no jurisdiction to review refusal to reopen absent a constitutional claim); *Temples v. Comm'r of Soc. Sec.*, 2013 WL 600218, at *2 (6th Cir. 2013) ("We lack jurisdiction to review the Appeals Council's refusal to reopen Temples' case because she has not raised any colorable constitutional claim.").

Having properly decided not to reopen plaintiff's March 2007 claim, the Commissioner contends that the ALJ properly applied the doctrine of *res judicata* to dismiss plaintiff's more recent June 2008 claim for disability insurance benefits. 20 C.F.R. § 404.957(c)(1). *Res judicata* applies where the agency has made a previous determination on the same facts and issues, and the previous determination has become final. *Id.* The Commissioner contends that, therefore,

this matter should be dismissed for lack of subject matter jurisdiction.

### III. ANALYSIS AND CONCLUSION

In this case, the ALJ considered plaintiff's claim that her mental illness prevented her from pursuing reconsideration of her earlier filed claim, but did not have the benefit of any medical records in support of this claim:

> A hearing into this matter was set for December 10, 2010, in Southfield, MI. Prior to the hearing, the undersigned contacted the claimant s representative, and advised him that there are no medical records in the file that concern the period of time between the claimant's alleged onset date and her date last insured, and that pending receipt of new and material evidence relevant to that period, there was no basis for reopening the 2007 decision. The claimant's representative then requested a postponement of the hearing to discuss the matter with his client, and to obtain any extant medical records. This request was granted, with the agreement that any medical records in support of reopening be submitted within 30 days of the scheduled hearing.
>
> After 30 days, no records were received and ODAR staff contacted the claimant's representative to seek an explanation as to why no records had been received. Claimant's counsel indicated that relevant records were under seal in a family court setting and could not be obtained without a court order. Counsel for the claimant was advised to send a written request for an extension of time to produce the relevant records with an explanation as to what was required for him to obtain the said records. Counsel for the claimant has failed to submit any relevant records for the period in issue since the scheduled hearing date, and has failed to submit valid documentation of the existence of such records to warrant further extension of the time for submission of

> any such records. Furthermore, the claimant's own submission concerning the existence of medical records at exhibit IE/53-54, identifies no medical treatment received between 1993 and some time in 2000, suggesting a seven-year period without medical treatment. Even if the claimant could establish a medically determinable impairment existing between 1991 and 1993, when her own recollection of treatment stopped for a period of at least six years between 1993 and 2000, she would not be entitled to benefits on a claim submitted in 2006, as she would have, at best, a closed period ending in 1993, some twelve years prior to her application date.
>
> Since the claimant has failed to demonstrate the existence of new and material evidence that could support a reopening of the prior decision, the doctrine of res judicata applies, the request for hearing dated September 30, 2008 is dismissed.

(Dkt. 8-1, Pg ID 42-43). Plaintiff's counsel then asked the Appeals Council to consider the following in the request for review:

> Claimant, Carol Loesch, has maintained that she was disabled due to psychiatric illness since prior to the termination of her insurable status. The ALJ noted that Claimant had previously filed but had not appealed a denial of benefits dated March 9, 2007. A subsequent application was filed and denied leading to the present ruling.
>
> As stated, ALJ determined that without a showing of the existence of new material evidence that the Claimant was disabled prior to December 31, 1999 when her insurable status ended there could be no reopening of the matter.
>
> * * *
> Carol Loesch indicated that the only psychiatric

records that were available, other than what the ALJ had already been provided, would be records of psychiatric treatment at the Cruze Clinic in Detroit, Michigan. These records would have covered treatment and diagnosis of Carol prior to termination of her insurable status. The Cruze Clinic was contacted but informed Claimant that records are destroyed after ten years.

Therefore, it was impossible to get the records from the Cruze Clinic.

Claimant's counsel asked for an adjournment of the hearing which was granted. Claimant's counsel contacted the Judge's chambers prior to the expiration of the 30 day extension and told the Judge's assistant that Claimant was unable to obtain the records from the Cruze Clinic. However, the records were believed to be stored in a suppressed file in the Wayne County Circuit Court - Family Division. That matter involved a case wherein Claimant's ability to effectively care for her adopted child was questioned. It was believed that the Cruze Clinic records were used in that hearing and, therefore, might be available.

Therefore, Claimant's counsel contacted the ALJ's assistant who suggested that Claimant simply request an adjournment and that a letter be written requesting said adjournment. On January 28, 2011 a faxed letter was sent to Judge Lewald explaining the situation and requesting an additional period of time until the records could be retrieved.

Nothing was heard from Judge Lewald's chambers until a dismissal of the matter dated February 22, 2011. It was Claimant's understanding that she was free to continue pursuing the Cruze Clinic records and that an opinion would not be issued in the meantime.

\* \* \*

Claimant's counsel received a Court Order

allowing an inspection of the sealed Wayne County file which did not contain Cruze Clinic records. As it turns out, the Cruze Clinic records were, in fact, not part of the family court hearing. Or, if they were, the Court returned the medical records to the Cruze Clinic and they were subsequently destroyed. Nonetheless, Claimant will show a significant history of a disabling psychiatric condition that dates all the way back to the time period prior to termination of insurable status. These records were submitted to the ALJ but returned to Claimant prior to a decision being issued.

If the medical records are viewed as a whole they certainly lead to the conclusion that Claimant has been disabled from all work since prior to date of termination of insurable status December 31, 1999. It should be noted that Claimant has not worked since 1994.

Attached as Exhibit 1 is a questionnaire from April of 1998 from the Sleep and Respiratory Associates of Michigan evidencing depression and irrational thoughts wherein Claimant states:

> "Want to talk about how to deal with Mom's death!! Been having hard time sleeping and feeling very depressed. Having fears about going back to the hospital and having bad fears about taking certain medications when prescribed them cuz afraid of something happening."

She notes sleeplessness and depression, fatigue, difficulty concentrating, forgetfulness, irritability and lack of energy. In May of 1998 it is noted that Claimant has "fears of death and fear of taking medications. She has been having difficulty sleeping and feeling depressed." Impression was psychophysiological insomnia following trauma of hospitalization and surgery and adjustment disorder with anxiety and depression. See

Exhibit 2.

On October 1, 1999 Dr. Kenneth Moss noted his impression of "depression with good response to Zoloft and psychotherapy." He recommended continued psychotherapy and that she should not drive. See Exhibit 3. Claimant continued treating with the Sleep Disorders Clinic and in October 2002 it was noted that Claimant suffered from depression. She was on Zoloft 50 mg. twice daily and continued to have mild insomnia. See Exhibit 4.

In July 2002 Claimant saw Mark Soverinsky, MD., who noted that Claimant "suffers from major depression." See Exhibit 5. Claimant was seen at Northport Psychological Clinic in August of 2002 where is was noted that she had anxiety and panic attacks as well as tightening of the chest. It was noted that "she had depression that had become worse since her Mother died in 1997. There was a suicidal threat on Monday where she was taken to the hospital and then released. She has suicidal ideation and wanted to stay in bed and had decreased appetite." It was noted that she had been depressed most of her adult life and had attempted suicide twice, the most recent being in 1992. (See Exhibit 6)

Therefore, prior to termination of insurable status Claimant was diagnosed with depression, insomnia, was instructed not to drive and had attempted suicide twice.

In 2002 the Michigan Family Independence Agency conducted a child protective services investigation. Claimant had adopted a child and the allegations were that the child was not in a safe environment due to Mrs. Loesch's mental status and level of functioning. An investigation entailed and a finding of major depression was noted with attention disorder and hyperactivity (see Exhibit 7).

> Over the course of the next several years Carol was hospitalized approximately 10 times for mental breakdowns and suicide attempts. For example, attached as Exhibit 8 is a Police Report documenting suicidal behavior.
>
> * * *
>
> These subsequent examples of Claimant's hospitalizations are provided to create a clear picture as to the state of the Claimant's condition, one that is essentially life long as an adult which began prior to December 31, 1999. Some of the records prior to December 31, 1999 are available though very few. Some of them have been destroyed due to records retention policy. However, it is suggested that the Claimant should not be prejudiced due to the record retention policy of the Cruze Clinic. Further, that a logical inference can be drawn that is based upon the 1998 and 1999 records submitted, and the condition which has been documented by records throughout the next several years, that the Claimant should be found to have a disabled status prior to termination of insured status.

(Dkt. 8-1, Pg ID 49-53). On August 29, 2012, the Appeals Council denied plaintiff's request for review. (Dkt. 8-1, Pg ID 54-55).

To survive the motion to dismiss, plaintiff must present a colorable constitutional claim that vests the courts with jurisdiction to review the application of *res judicata*. It is well-settled that a "court may not review a refusal to reopen an application for benefits absent a constitutional challenge." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990), citing *Gosnell v. Califano*, 625 F.2d 744, 745 (6th Cir. 1980); *Ingram v. Sec'y of Health & Human Servs.*, 830 F.2d 67, 67 (6th Cir. 1987), citing *Califano v. Sanders*, 430 U.S. 99

(1977). As noted in *Parker v. Califano*, 644 F.2d 1199 (6th Cir. 1981):

> [The Supreme Court in *Sanders*] noted that the clear language of Section 205(g) indicated that the federal courts' jurisdiction under the [Social Security] Act is limited to review of a 'final decision of the Secretary made after a hearing.' [*Sanders*, 430 U.S.] at 108. The Court held that because a petition to reopen may be denied without a hearing Congress did not intend Section 205(g) to provide the jurisdictional predicate for judicial review of the Secretary's decision not to reopen a prior final decision. *Id*.

*Parker*, 644 F.2d at 1201. The Sixth Circuit went on to note that "[s]ince the advent of *Sanders*, the courts have held that, absent a colorable constitutional claim, federal courts are without jurisdiction to review the Secretary's denial of benefits on the basis of res judicata." *Id*. (citations omitted); *see also Baker v. Astrue*, 2013 WL 4437458, *5 (E.D. Mich. 2013) (The Sixth Circuit has "clearly held that the logic of *Sanders* extends to actions seeking review of the Secretary's denial of a hearing request on res judicata grounds."), quoting *DeLeon v. Sec'y of Health & Human Servs.*, 687 F.Supp. 320 (W.D. Mich. 1987), citing *Crouch v. Sec'y of Health & Hum. Servs.*, 714 F.2d 139 (6th Cir. 1983).

The existence of a such a claim is a question of law for the court to decide. *Wills v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 872 (6th Cir. 1986). In reviewing the findings of fact on which the Commissioner's determination is based, Court must determine whether they are supported by substantial evidence.

*See Wills*, 802 F.2d at 873; *see also Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999); *Vaswani v. Barnhart*, 2007 WL 2412262 (S.D.N.Y. 2007) (Where the Appeals Council considered whether the evidence of mental impairment submitted by plaintiff established good cause for reopening the claim, the SSA had addressed the substance of the due process claim and the Court was permitted to review the appeals' council ruling for substantial evidence) (citing *Byam v. Barnhart*, 336 F.3d 172 (2d Cir. 2003)). As outlined in *Parker v. Califano*, after the agency has made a determination regarding whether plaintiff's mental illness prevented her from pursuing her administrative remedies, "the district court will have a sufficient record before it to decide what relief, if any, is consonant with due process and the Secretary's regulatory scheme." *Id.* at 1203; *see also Blake v. Barnhart*, 2003 WL 1343021 (D.N.H. 2003) (The court denied the motion to dismiss where the plaintiff raised a colorable constitutional claim regarding the ALJ's denial of the request to reopen the DIB application; the court had subject matter jurisdiction over this decision and review of the matter was limited to whether substantial evidence supports the ALJ's determination that the plaintiff was able to comprehend and/or act upon the administrative remedies available.).

Based on the foregoing authority, it seems readily apparent that plaintiff has alleged a colorable constitutional claim given the evidence presented that her mental illness precluded her from pursuing her administrative remedies. Thus, the

Commissioner's motion to dismiss should be denied on this basis. Whether substantial evidence supports the Commissioner's decision that plaintiff was afforded due process and that plaintiff failed to present sufficient evidence that her mental impairments prevented her from completing all the necessary steps at the administrative level is not an issue before the Court in this motion. Rather, as mandated by *Parker v. Califano*, after appropriate briefing and submission of the complete record, the Court will have to determine whether the Commissioner's decision is supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's motion to dismiss be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 7, 2014                          s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on <u>April 7, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Ross M. Gilders, Joseph F. Lucas, Ameenah Lewis and Laura A. Sagolla</u>.

                                             s/Tammy Hallwood
                                             Case Manager
                                             (810) 341-7887
                                             tammy_hallwood@mied.uscourts.gov